**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| NET 3 TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> OASIS DISCOVERY PARTNERS, LLC, <br><br> Defendant. | Civil Action No. _____ <br><br><br> # EXHIBIT A |

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

## N3T PALMETTO VIRTUAL DATA CENTER SERVICES AGREEMENT

THIS AGREEMENT and all Quotes and/or SOWs, exhibits, and addenda attached hereto, which are incorporated in their entirety by reference, (collectively, the "Agreement") is entered into by and between

> Net 3 Technology, Inc.,
> 107 W Antrim Dr
> Greenville, South Carolina 29607

and

> **Oasis Discovery** ("Customer")
> **2537-D PACIFIC COAST HWY STE 346**
> **TORRANCE, CA, 90505-7035**

on 01/24/2019
(the "Effective Date")

WHEREAS, the Company provides the Palmetto Virtual Data Center ("PvDC") a data center consisting of proprietary solutions which enables the customer to control the resource allocations within the Customer's technology environment, a catalog of VM templates, data backup, disaster recovery, and continuity services, and consulting services, including gap analysis, data migration, and managed IT services and other services through one or more of PvDC Select, PvDC On Demand, PvDC File, PvDC BRS, PvDC BaaS, or PvDC Symmetry Dev Ops. (hereinafter, the "Services"), as shown on one or more Quote and/or Statement of Work (hereinafter "SOW").

NOW THEREFORE, the parties agree that Customer may use the Services, proprietary software, and related material and may purchase certain equipment as detailed on the applicable Quote and/or SOW.

1. <u>Company Services</u>. Company shall provide Customer with Services, as shown on one or more separate 'Exhibits', which will allow Customer the ability to consume the resources under terms in one or more applicable Quote and/or SOW. Company may (i) automatically update Services without prior notice to Customer, (ii) upgrade, enhance, change, and modify the Services, or (iii) discontinue or retire particular elements of the Services at the Company's sole discretion. Unless otherwise agreed, the Services will be provided at the location(s) of Company. Customer will provide access to its physical location, technology, employees, and independent contractors as reasonably needed for Company to provide the Services.

2. <u>License / Subscription</u>. During the term, Company may grant to Customer a revocable, limited, non-transferable, non-exclusive license or subscription to use the Services as detailed in the applicable Quote and/or SOW. Customer may not reverse engineer, decompile, disassemble, modify, or create derivative works of the Services or any aspect or component of the Services. Customer may not assign, sublicense, rent, timeshare, loan, lease, or otherwise transfer the Services, in whole or in part, or directly or indirectly permit any third party to copy or use the Services, in whole or in part, unless otherwise provided in the applicable Quote and/or SOW.

3. <u>Term of Agreement</u>. This Agreement shall have an initial term of one (1) year ("Initial Term"). This Agreement shall automatically renew for similar terms ("Renewal Term)" thereafter unless earlier terminated by either party as stated herein.

4. <u>Payment terms</u>. Customer shall pay Company the compensation as set forth in the applicable Quote and/or SOW. Unless otherwise agreed to in the applicable Quote and/or SOW:

   a. Compensation for the Initial Term and any Renewal Term is non-refundable. While compensation may be described into monthly payments, Customer is obligated for Initial Term or Renewal Term as applicable.
   b. Customer must provide Company thirty (30) days written notice when decreasing usage to request an adjusted rate.

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

c.  Invoices will be sent to Customer via US mail or electronic mail at Company's discretion using the contact information listed below. It is the Customer's responsibility to maintain current contact information with Company.

d.  All invoices must be paid 30 days from receipt unless otherwise stated on the invoice or statement with no offset or abatement. All invoices unpaid after the due date are considered past due.

e.  During the Agreement Term, Monthly Recurring Charges ("MRC") may increase by actual cost if third party vendors increase cost.

f.  It is the responsibility of the Customer to contact the Company at least ten (10) days prior to the due date in the event that the Customer requests alternate payment arrangements. The Company is under no obligated to make any such payment arrangements.

g.  If any payments of due from Customer to Company is not received by Company within 5 business days of when due, such unpaid amounts shall bear interest at the greater of 0.5% of the total outstanding amount due, or $50.00 ("Late Charge"). The parties agree that this Late Charge represents a fair and reasonable estimate of the costs that Company will incur by reason of late payments by Customer. Acceptance of any Late Charge shall not constitute a waiver of Customer's default with respect to the overdue amount or prevent Company from exercising any of the other rights and remedies available to Company hereunder.

h.  All Services may be suspended, and all access restricted on the 30th day after payment is due. A $50.00 reconnect fee, in additions to any Late Charge, must be paid to reinstate the Services.

i.  If any uncollected payment is referred to either an external agency or an attorney for collection and/or legal suit, the debt is increased to cover all reasonable costs of collection, including collection agency and attorney fees and court costs.

j.  All cancellations must be received in writing as specified in the Notice and Termination Sections of this Agreement.

5.  <u>Technical Support and Maintenance.</u> Unless otherwise stated in a Quote and/or SOW and subject to the full and current payment for the Services, technical support shall be provided by telephone or e-mail Monday to Friday (except federal holidays) between the hours of 8.00 am – 5.00 pm EST ("Support"). The authorized users of the Services may receive from time-to-time notifications about upgrades including: new versions, service packs, patches and instructions for applying the upgrades that are supplied by the Company during the license or subscription period. Company may, from time to time, suspend the Services for maintenance, repair, and updates. Company strives to limit these downtimes so as to minimize interference with Customer. Customer agrees that these downtimes are an integral part of the Service provided and do not violate the terms of this contract.

6.  <u>Customer Agreements.</u> To receive Support, Customer must comply with the following:

a.  Any software upgrades or significant changes made by Customer require fifteen (15) business days written notice to Company.

b.  Any maintenance and/or technical support provided to Customer due to a Customer's change in hardware, software, of other vendors will be billed to Customer at Company's then time and material rates.

c.  Customer will insure that the software installed and used is at a current release level supported by software vendor.

d.  Customer's representative calling for assistance must have technical knowledge regarding the hardware and software installed and any other software involved and the facts and circumstances surrounding the incident to the extent necessary to enable Company to carry out its support obligations.

e.  The full system, including software and hardware, is available and accessible to the Customer's representative without limit during any telephone discussions with the Company's support technician.

f.  The Customer's representative must follow the instructions and suggestions of Company's support technician, using the full system.

g.  Customer must provide other reasonable actions to enable Company to provide technical support.

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

7.  <u>Independent Contractor Status.</u> The parties agree that Company will act as an independent contractor in the performance of its duties under this Agreement. This Agreement does not constitute a hiring by either party. It is the parties' intention that so far as shall be in conformity with the law, Company shall be an independent contractor and in conformity therewith that Company shall retain sole and absolute discretion and judgment in the manner and means of carrying out the Services. Customer has control over Company only with respect to the results Customer wishes to obtain with respect to the Services, and not over the means with which the Company provides the Services. Company shall be solely responsible for the payment of all costs, expenses, and taxes, including, but not limited to, FICA, federal, state, and local withholding taxes, unemployment, health and disability insurance, and the like, which shall now or hereafter become due and payable by reason of payments made to Company pursuant to this Agreement. Company acknowledges and agrees that it is not an employee of Customer, and hereby waives and disclaims any and all present and future claims to any and all benefits, retirement benefits, health insurance, group life insurance, disability insurance, and all other benefits, programs or entitlements of any nature whatsoever offered by Customer to its employees. Nothing contained in this Agreement shall be deemed to constitute either Company or Customer as an agent, representative, partner, joint venture, or employee of the other party for any purpose. Neither party has the authority to bind the other or to incur any liability on behalf of the other, nor to direct the employees of the other.

8.  <u>Assignment</u>. Customer may not assign this Agreement without 30 days prior notice to the Company and prior written consent by the Company. Consent may be withheld and is at the sole discretion of the Company.

9.  <u>Confidentiality</u>.

    a.  <u>"Confidential Information" Defined</u>. "Confidential Information" means any data, materials, or information that is not generally known to the public and that is owned or possessed by either party ("Disclosing Party") and is disclosed to the other party ("Receiving Party"), whether in oral, written, digital, or other form of disclosure. Confidential Information also includes any third-party information which Disclosing Party is required to keep confidential ("Third Party Confidential Information"). Without limitation of the foregoing, the parties agree that the terms of this Agreement constitute Confidential Information (yet the fact that the parties have entered into the Agreement and the general nature of the relationship between the parties is not confidential).

    b.  <u>"Trade Secrets" Defined</u>. "Trade Secret" shall mean information defined by the South Carolina Trade Secrets Act, S.C. Code § 39-8-10 et seq.

    c.  <u>Excluded From "Confidential Information."</u> Confidential Information does not include any data or information which Receiving Party can demonstrate: (i) was already known to Receiving Party at the time of disclosure; (ii) was independently developed by Receiving Party without reference to Disclosing Party's Confidential Information; (iii) is in the public domain; or (iv) was rightfully disclosed to Receiving Party by a third party without obligation of confidentiality.

    d.  <u>Prohibition Against Disclosure and Use of Confidential Information & Trade Secrets</u>. During the term of this Agreement, and indefinitely thereafter, Receiving Party will not, except as otherwise expressly directed by Disclosing Party, use, copy, or disclose, or permit any unauthorized person access to, any of Disclosing Party's Trade Secrets, except as expressly permitted herein and necessary for accomplishment of activities required hereby. During the term of this Agreement and indefinitely after termination hereof, Receiving Party will not use, copy, or disclose, or permit any unauthorized person access to, Disclosing Party's Confidential Information, except as expressly directed by such party or as permitted herein. Receiving Party agrees to comply with any confidentiality agreements or the like to which Disclosing Party is a party to the extent Disclosing Party notifies Receiving Party of such agreements and obligations in writing prior to execution of this Agreement.

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

e. <u>Confidential Information & Trade Secrets Disseminated Only on Need to Know Basis</u>. Receiving Party agrees that it will disclose Confidential Information or Trade Secrets to its employees, agents or independent contractors directly involved with any Quote and/or SOW only as necessary for the performance of Receiving Party's obligations under this Agreement. Prior to disclosing Confidential Information or Trade Secrets to such employees or agents, Receiving Party will verify with Disclosing Party that such employees or agents are subject to appropriate confidentiality agreements with terms at least as restrictive as those contained herein.

f. <u>Safeguards Against Disclosure</u>. Receiving Party agrees to use at least the same degree of care to avoid and prevent disclosure of Disclosing Party's Confidential Information and Trade Secrets as Receiving Party uses to prevent disclosure of its own Confidential Information and Trade Secrets or Receiving Party shall exercise a commercially reasonable degree of care, whichever degree of care is higher.

g. <u>Equitable Relief</u>. Receiving Party acknowledges and agrees that the misappropriation, unauthorized use, or disclosure of Confidential Information or Trade Secrets would cause irreparable harm to the Disclosing Party. In the event of any breach of any part of this Section by Receiving Party, Disclosing Party shall be entitled to equitable relief, including, but not limited to, a temporary restraining order, temporary injunction, and/or a permanent injunction. Receiving Party waives any objection to and will not oppose Disclosing Party's request for injunction relief without bond. The rights of Disclosing Party under this Section are in addition to the rights that Disclosing Party may have under this Agreement, common law or statutory law.

10. <u>Intellectual Property Rights</u>.

a. <u>Ownership of Intellectual Property</u>. In the course of providing the Services, Company may create material and property that may include documentation, software, designs, know-how, and the like ("Created Works") that may be subject to protection by intellectual property laws (relating to patents, trademarks, and copyrights), laws pertaining to trade secrets or unfair competition, similar laws protecting intangible property (database or information protection laws) and information not protectable by the preceding laws yet otherwise protectable (all of such property being referred to herein as "Intellectual Property"). Company owns all rights, title, and interested into the Created Works and the Intellectual Property.

b. <u>Equitable Relief</u>. The parties acknowledge and agree that the misappropriation of, unauthorized use of, or infringement of Created Works or Intellectual Property would cause irreparable harm to Company. In the event of any breach of any part of this Section, Company shall be entitled to equitable relief, including, but not limited to, a temporary restraining order, temporary injunction, and/or a permanent injunction.

c. <u>Company License</u>. During the Term of this Agreement, Company grants to Customer a non-exclusive, license in and to Created Works and Intellectual Property necessary to benefit from the Services.

11. <u>Indemnification</u>. Customer agrees to indemnify and hold Company, its officers, directors, attorneys, employees, and agents harmless from any and all claims, losses, damages, expenses, judgments, or other liabilities (including but not limited to reasonable attorneys' fees which are incurred prior to, during or after trial, bankruptcy proceeding, or any alternative dispute mechanism, and including, but not limited to, tax liability, interest, and penalties) for (1) any damage to Customer's data, software, or hardware, which is the result of action or inaction by the Customer (2) any material breach of this Agreement by Customer, its employees, or agents, (3) property damage or personal injury caused by the negligent or willful acts or omissions by Customer, its employees, or agents, (4) illegal acts or omissions by Customer, its employees, or agents or (5) any claims or allegations arising from any action or omission on the part of the Company resulting from or caused by Customer's designs, instructions, or requirements.

Customer acknowledges and agrees that Company may use the products or services of third party datacenters and vendors. These third parties may suspend their services, shut down their systems, go offline, or otherwise interrupt

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

the Services without fault of the Company, and without warning to the Company or Customer. Customer agrees to indemnify and hold Company harmless for any and all claims arising from the services of the third-party datacenters and vendors.

Company agrees to indemnify and hold Customer, its officers, directors, attorneys, employees, and agents harmless from any and all claims, losses, damages, expenses, judgments, or other liabilities (including, but not limited to, reasonable attorneys' fees which are incurred prior to, during or after trial, bankruptcy proceeding, or any alternative dispute mechanism, and including but not limited to tax liability, interest, and penalties) for which Customer becomes obligated to pay due to (1) any material breach of this Agreement by Company, its employees, or agents, (2) property damage or personal injury caused by the negligent or willful acts or omissions by Company, its employees, or agents, (3) illegal acts or omissions by Company, its employees, or agents, or (4) and claim, assertion, or threat of infringement of any third party's rights, including intellectual property rights, alleged or made against Customer based upon the performance of the Services, or Created Work.

12. Interrupted Service/Remedies. In the event that Customer experiences an unscheduled loss of service for at least 2 hours during normal business hours (hereinafter "Unscheduled Interruption"), Customer shall be entitled to compensation from the Company based upon the amount of the Customer's monthly contract and the duration of the Unscheduled Interruption. 2 hours = 1 week free; 4 hours = 2 weeks free; 8 hours = 1 month free. An Unscheduled Interruption does not include an interruption due to the act or omission of a third-party datacenter or vendor.

13. Termination.

a. Company shall have the right, but not the obligation, to terminate this Agreement at any time under the following conditions: (i) Customer is more than thirty (30) days past due on any invoice; (ii) Customer is in breach of any of the terms of this Agreement and fails to cure such breach within thirty (30) days of receipt of written notice describing the breach; (iii) Customer is in breach of any of their contracts with third party service providers, if applicable; and (iv) Customer is insolvent or any proceeding has been filed by or against Customer seeking relief from creditors.

b. If either party is adjudged insolvent or bankrupt, or upon the institution of any proceedings by it seeking relief, reorganization, or arrangement under any laws relating to insolvency, or if an involuntary petition in bankruptcy is filed against a party and the petition is not discharged within sixty (60) days after filing, or upon any assignment for the benefit of a party's creditors, or upon the appointment of a receiver, liquidator, or trustee of any of a party's assets, or upon the liquidation, dissolution, or winding up of its business (each, an "Event of Bankruptcy"), then the party affected by any Event of Bankruptcy must immediately give notice of the Event of Bankruptcy to the other party, and the other party may terminate this Agreement by notice to the affected party.

c. Customer shall have the right to terminate this Agreement for cause if each of the following conditions are met: (i) Company breaches an obligation articulated in this Agreement, (ii) Customer notifies Company in writing and lists the specific obligations that have been breached, and (iii) Company fails to cure the obligation within sixty (60) days of receiving notice. Customer shall not be entitled to any refund or return fees paid and shall pay all outstanding balances due and payable to the Company.

d. Customer shall have the right to terminate this Agreement without cause by giving Company written notice thirty (30) days prior to the effective date of termination. Customer shall not be entitled to any refund or return fees paid and the full amount due for the Initial Term or Renewal Term, whichever is applicable, shall be immediately due and payable to the Company regardless of the length of time this Agreement has been in effect. Customer shall be fully liable for any and all hardware, software, or other infrastructure costs expended by the Company. Such hardware, software, or other infrastructure costs expended by the Company shall be due and payable upon receipt of notice of termination from the Customer.

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

e. In the event of termination for any reason by either party, Company will maintain Customer's data for 30 days ("Data Transfer Period") and Customer agrees to continue to pay the then monthly data hosting rate, unless otherwise stated in the applicable Quote and/or SOW, until Customer's data is transferred. In no event will Customers' data be transferred if (a) Customer is thirty (30) days past due on any invoice. During the Data Transfer Period or (b) Customer and Company have not enter into an additional Quote and/or SOW for data transfer services. The parties agree that until a Quote and/or SOW for contract to data transfer services can be agreed upon by both parties, that no data shall be transferred by Customer, Company, or any other third party. This provision shall survive termination of this Agreement.

14. <u>Severability</u>. The covenants set forth in this Agreement shall be considered and construed as separate and independent covenants. Should any part or provision of any covenant be held invalid, void, or unenforceable in any court of competent jurisdiction, such invalidity, voidness, or unenforceability shall not render invalid, void, or unenforceable any other part or provision of this Agreement. All remaining provisions herein shall continue in full force and effect.

15. <u>Survivability.</u> The terms and conditions of this Agreement that, by their sense and context, are intended to survive the termination, performance, or completion of this Agreement shall so survive.

16. <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of South Carolina without regard to the conflict of law provisions thereof, and the state and federal courts located in Greenville County, South Carolina shall have exclusive jurisdiction of the parties for the purposes of adjudicating all disputes that may arise under this Agreement. The parties hereby waive all objections to venue and personal jurisdiction in such forum for such disputes and agree that service of process may be made by in accordance with the notice provision of this Agreement.

17. <u>Waiver</u>. No waiver, amendment, or modification of any provision of this Agreement or any agreements in connection with such waiver, amendment, or modification shall be valid unless in writing, duly executed by both parties. No delay or failure by either party to exercise or enforce at any time any right or provision of this Agreement will be considered a waiver thereof or of such party's rights thereafter to exercise or enforce each and every right and provision of the Agreement. No single waiver will constitute a continuing or subsequent waiver.

18. <u>Disclaimers and Limitation of Liability.</u>

THE COMPANY MAY USE THIRD PARTY HARDWARE, PRODUCTS, SOFTWARE, SERVICES, OR PROGRAMMING, OR CUSTOMER MAY OBTAIN THIRD PARTY HARDWARE, PRODUCTS, SOFTWARE, OR PROGRAMMING FROM THIRD PARTIES DIRECTLY, ("THIRD PARTY COMPONENTS"). THE THIRD-PARTY SERVICES, ALL THIRD-PARTY COMPONENTS AND ALL BETA SOFTWARE ARE PROVIDED "AS IS," "WHERE IS," "AS AVAILABLE," "WITH ALL FAULTS" AND, TO THE FULLEST EXTENT PERMITTED BY LAW, WITHOUT WARRANTY OF ANY KIND BY THE COMPANY. COMPANY DISCLAIMS ALL WARRANTIES WITH RESPECT TO THE THIRD-PARTY SERVICES, THE THIRD-PARTY PRODUCTS, THIRD PARTY COMPONENTS, AND ALL BETA SOFTWARE, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND TITLE, AND ANY WARRANTIES REGARDING QUIET ENJOYMENT, QUALITY OF INFORMATION, SECURITY, RELIABILITY, TIMELINESS, AVAILABILITY OF BACKED-UP DATA, AND PERFORMANCE OF THE THIRD-PARTY SERVICES. COMPANY DOES NOT WARRANT THAT THE THIRD-PARTY SERVICES, THIRD PARTY COMPONENTS, OR BETA SOFTWARE WILL MEET CUSTOMER'S REQUIREMENTS, OR THAT THE OPERATION OF THE THIRD-PARTY SERVICES, THIRD PARTY COMPONENTS, OR BETA SOFTWARE WILL BE UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS IN THE THIRD-PARTY SERVICES, THIRD PARTY COMPONENTS, OR BETA SOFTWARE WILL BE CORRECTED, OR THAT ENCRYPTION ALGORITHMS, ASSOCIATED KEYS AND OTHER SECURITY MEASURES WILL BE SECURE OR EFFECTIVE. YOU UNDERSTAND AND AGREE THAT CUSTOMER'S INSTALLATION, USE, AND ACCESS OF THE THIRD-PARTY SERVICES, THIRD PARTY COMPONENTS AND ALL BETA SOFTWARE IS AT CUSTOMER'S SOLE DISCRETION AND RISK AND THAT COMPANY IS NOT RESPONSIBLE FOR ANY DAMAGES TO CUSTOMER'S COMPUTER, SOFTWARE, AND THE LOSS OF BACKED-UP DATA THAT RESULTS FROM THE USE THEREOF. ADDITIONALLY, THIRD PARTY DATA CENTERS MAY SHUT THEIR SYSTEMS DOWN OR GO OFFLINE WITHOUT WARNING TO COMPANY OR CUSTOMER, CUSTOMER AGREES THAT COMPANY MAKES NO

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

REPRESENTATION, WARRANTY OR GUARANTEES AS TO THE THIRD-PARTY DATA CENTERS. CUSTOMER AGREES THAT THE COMPANY SHALL HAVE NO LIABILITY FOR THE SERVICES OF THE THIRD-PARTY DATA CENTER WHATSOEVER. FURTHER, CUSTOMER AGREES TO RELEASE COMPANY FROM ANY AND ALL CLAIMS ARISING FROM THE SERVICE OF THE THIRD-PARTY DATA CENTER. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY COMPANY SHALL CREATE ANY ADDITIONAL COMPANY WARRANTIES OR IN ANY WAY INCREASE THE SCOPE OF COMPANY'S OBLIGATIONS HEREUNDER. CUSTOMER HEREBY WAIVE ANY AND ALL CLAIMS, NOW KNOWN OR LATER DISCOVERED, THAT CUSTOMER MAY HAVE AGAINST COMPANY AND ITS AFFILIATES ARISING OUT OF CUSTOMER'S USE OF THE THIRD-PARTY SERVICES, THIRD PARTY COMPONENTS AND BETA SOFTWARE. THE SERVICES MAY BE USED TO ACCESS AND TRANSFER INFORMATION OVER THE INTERNET. CUSTOMER ACKNOWLEDGE AND AGREE THAT COMPANY DOES NOT OPERATE OR CONTROL THE INTERNET AND THAT (I) VIRUSES, WORMS, TROJAN HORSES, AND OTHER UNDESIRABLE DATA, OR SOFTWARE, OR (II) UNAUTHORIZED USERS (E.G., HACKERS) MAY ATTEMPT TO OBTAIN ACCESS TO AND DAMAGE CUSTOMER'S DATA, WEB SITES, COMPUTERS, OR NETWORKS. COMPANY SHALL NOT BE RESPONSIBLE FOR SUCH ACTIVITIES. CUSTOMER IS SOLELY RESPONSIBLE FOR THE SECURITY AND INTEGRITY OF CUSTOMER'S DATA AND SYSTEMS.

CUSTOMER IS SOLELY RESPONSIBLE AND LIABLE FOR CUSTOMER'S CONDUCT, DATA, BACKED-UP DATA, AND THIRD-PARTY VENDORS, SOFTWARE HARDWARE OR THIRD-PARTY SERVICES RELATED TO THE SERVICES PROVIDED BY COMPANY. COMPANY SHALL REMAIN RESPONSIBLE FOR THE SERVERS AND UPTIME. CUSTOMER AGREES TO INDEMNIFY, DEFEND, AND HOLD COMPANY, AND ITS OFFICERS, DIRECTORS, SHAREHOLDERS, AFFILIATES, SUPPLIERS AND LICENSORS HARMLESS FROM AND AGAINST ANY AND ALL LOSS, COST, DAMAGE, LIABILITY AND EXPENSE (INCLUDING ATTORNEYS' FEES, EXPERT FEES AND OUT-OF-POCKET EXPENSES) ARISING OUT OF, RESULTING FROM, OR IN CONNECTION WITH YOUR BREACH OF THESE TERMS. TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT SHALL COMPANY OR ITS AFFILIATES BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY CONSEQUENTIAL, SPECIAL, INCIDENTAL, PUNITIVE, INDIRECT, OR EXEMPLARY DAMAGES, INCLUDING DAMAGES FOR PERSONAL INJURY, LOST PROFITS, LOSS OF DATA AND BACKED-UP DATA, BUSINESS INTERRUPTION, OR LOST REVENUES, ARISING OUT OF YOUR USE OR INABILITY TO USE THE COMPANY SERVICES OR YOUR USE OF DATA OR FILES STORED THEREIN, EVEN IF COMPANY HAS BEEN ADVISED ABOUT THE POSSIBILITY OF SUCH DAMAGES (WHETHER SUCH DAMAGES ARISE IN CONTRACT, TORT (INCLUDING NEGLIGENCE OR OTHERWISE)). IN ANY CASE AND WITHOUT LIMITING THE FOREGOING, THE ENTIRE LIABILITY OF COMPANY AND ITS AFFILIATES, SUPPLIERS, AND LICENSORS FOR ALL DAMAGES OF EVERY KIND AND TYPE (WHETHER SUCH DAMAGES ARISE IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE) SHALL BE LIMITED TO THE LICENSE FEES PAID BY YOU TO COMPANY IN THE TWELVE (12) CALENDAR MONTHS PRIOR TO THE DAMAGES ARISING. IF THE SERVICES ARE PROVIDED TO CUSTOMER WITHOUT CHARGE, THEN COMPANY SHALL HAVE NO LIABILITY TO CUSTOMER WHATSOEVER. THE FOREGOING TERMS SET A LIMIT ON THE AMOUNT OF DAMAGES PAYABLE AND ARE NOT INTENDED TO ESTABLISH LIQUIDATED DAMAGES. CUSTOMER EXPRESSLY RECOGNIZES AND ACKNOWLEDGES THAT SUCH LIMITATION OF LIABILITY IS AN ESSENTIAL PART OF THIS AGREEMENT AND IS AN ESSENTIAL FACTOR IN ESTABLISHING THE PRICE OF THE SERVICES.

Customer agrees, to the fullest extent permitted by law, to limit the liability of the Company and the Company's officers, directors, partners, employees for any and all claims, losses, costs, damages of any nature whatsoever, or claims expenses from any cause or causes, including attorneys' fees and costs and expert witness fees and costs, so that the total aggregate liability of the Company and the Company's subcontractors shall not exceed Company's total fee for Services received by Customer in the past six (6) months. It is intended that this limitation apply to any and all liability or cause of action however alleged or arising unless otherwise prohibited by law.

Customer acknowledges that the interruption of access to their data could result in harm to their business and/or profits. Customer hereby agrees to release from liability, hold harmless, covenants not to sue, and waives any and all claims against Company and its officers, agents, employees, associates, volunteers, contractors, sponsors, and all other entities affiliated with the Company for any and all liabilities or damage, arising from the Customer's inability to access the Services of Customer's data due to suspension of the Services and access to Customer' s data due to non-payment to the Company, or a third party.

Some jurisdictions do not allow the exclusion of incidental or consequential damages, or the limitation on how long an implied warranty lasts, so some of the foregoing terms may not apply to you.

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

19. Force Majeure. Neither party shall be liable for any delay or non-performance of any covenant contained herein nor shall any such delay or non-performance constitute a default hereunder or give rise to any liability or damages if such delay or non-performance is caused by an event of "force majeure." The term "force majeure" means events beyond the reasonable control of such party. All parties shall make a good faith effort to effectuate this Agreement where there is an occurrence of a force majeure during and after the occurrence to the extent commercially reasonable.

20. No Waivers, Cumulative Remedies. A party's failure to insist upon strict performance of any provision of this Agreement is not a waiver of any of its rights under this Agreement. Except if expressly stated otherwise, all remedies under this Agreement, at Law, or in equity, are cumulative and nonexclusive.

21. Captions and Plural Terms. All captions are for purposes of convenience only and are not to be used in interpretation or enforcement of this Agreement. Terms defined in the singular have the same meaning in the plural and vice versa.

22. Notices. All notices, requests, and demands given or made pursuant to this Agreement shall be sent by certified mail, registered mail, or private carrier such that the notifying party can prove both delivery of notice and that the recipient received the notice (or refused to receive) and the respective dates thereof. Notices shall be sent to the address below or to any successor address provided by either party.

Company:        Net3 Technology, Inc.
                107 W. Antrim Dr.
                Greenville, SC 29607

Customer:       Oasis Discovery
                2537-D PACIFIC COAST HWY STE 346
                TORRANCE, CA 90505-7035

23. Entire Agreement & Modification. This Agreement represents the entire understanding and agreement between the parties as to the matters referenced herein, supersedes all prior oral or written understandings and agreements relating thereto, and is not subject to change, alteration, or modification except by written agreement signed by the duly authorized representatives of the parties.

24. Counter Parts / Electronic Signatures. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement. This Agreement may be executed and delivered by facsimile or by .pdf file and upon such delivery the facsimile or .pdf signature will be: (a) deemed to have the same effect as if the original signature had been delivered to the other party, (b) an acknowledgment that the parties intend to conduct this transaction by electronic means and (c) the "Electronic signature" of the party as defined in the South Carolina Uniform Electronic Transactions Act.

DocuSign Envelope ID: B54F99D8-C92D-496C-897A-50C4A30FF9F8

| Customer | Company |
|---|---|
| By:     Saleem Dababn<br>(Sign here) | By:<br>(Sign here) |
| Name:   Saleem Dababneh | Name:   Hudson Denney |
| Title:   Chief Operating Officer | Title:   Owner |
| Date:   01/24/2019 | Date:     1-24-2019 |

Signature: *Saleem Dababneh*
Saleem Dababneh (Jan 24, 2019)

Email:   sd@oasisdiscovery.com

# Net3CloudServicesAgreement_v4.1_SDA-v2.docx[1]

Final Audit Report                                                    2019-01-24

| | |
|---|---|
| Created: | 2019-01-24 |
| By: | Hudson Denney (hdenney@n3t.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAPjnKUqq9NPXpDYsiQxvtDqs7pKAdVQwy |

## "Net3CloudServicesAgreement_v4.1_SDA-v2.docx[1]" History

📄 Document created by Hudson Denney (hdenney@n3t.com)
2019-01-24 - 3:43:26 PM GMT- IP address: 71.85.143.30

📧 Document emailed to Saleem Dababneh (sd@oasisdiscovery.com) for signature
2019-01-24 - 3:43:51 PM GMT

📄 Document viewed by Saleem Dababneh (sd@oasisdiscovery.com)
2019-01-24 - 3:44:38 PM GMT- IP address: 64.233.172.201

✍️ Document e-signed by Saleem Dababneh (sd@oasisdiscovery.com)
Signature Date: 2019-01-24 - 3:58:56 PM GMT - Time Source: server- IP address: 100.44.201.173

✅ Signed document emailed to Saleem Dababneh (sd@oasisdiscovery.com) and Hudson Denney (hdenney@n3t.com)
2019-01-24 - 3:58:56 PM GMT